SIGNED THIS: January 2, 2013

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JERRY DEAN FERGUSON and | ) | Case No. 10-81401 |
| JULIE RENE FERGUSON, | ) | |
| | ) | |
| Debtor. | ) | |

O P I N I O N

Before the Court for confirmation is the First Amended Chapter 12 Plan of Reorganization filed by the Debtors, Jerry D. Ferguson and Julie R. Ferguson (DEBTORS). Objections to confirmation have been filed by creditors Lee Foster, LaHarpe Elevator and West Central FS, Inc. While the standing Chapter 12 Trustee, Michael D. Clark, has not filed a written objection to the first amended plan, he has asserted a verbal objection and has filed a brief in opposition to confirmation.

In the first amended plan, the DEBTORS are proposing to pay large income tax liabilities to the Internal Revenue Service (IRS) and the Illinois Department of Revenue (IDOR). When they filed their chapter 12 petition on April 28, 2010, the DEBTORS filed

Schedule E stating that they did not have any unpaid prepetition income tax liability. On August 31, 2010, after notice and Court approval, the DEBTORS sold much of their farm machinery and equipment at auction, generating gross proceeds of $304,470 and creating a tax liability for capital gains of an unspecified amount. The DEBTORS also had ordinary farm income in 2010, as well as nonfarm income from Jerry Ferguson's employment as a railroad conductor and Julie Ferguson's employment as a respiratory therapist.

The initial Chapter 12 Plan of Reorganization filed by the DEBTORS on May 25, 2011, proposed to treat the postpetition capital gains taxes as general unsecured (nonpriority) claims in reliance on section 1222(a)(2)(A), which provides as follows:

> (a) The plan shall –
>
> * * *
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless –
>
>> (A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge.

11 U.S.C. § 1222(a)(2)(A).[1]

In proposing that treatment of the tax debt in their initial plan, the DEBTORS expressly relied upon *Knudsen v. I.R.S.*, 581 F.3d 696 (8th Cir. 2009), holding that the priority-stripping effect of section 1222(a)(2)(A) is not limited to prepetition sales, but captures capital gains taxes arising from postpetition sales of farm assets as well. *Knudsen*

---

[1] This provision was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

was subsequently abrogated by the Supreme Court in *Hall v. U.S.,* 132 S.Ct. 1882, 182 L.Ed.2d 840 (2012)(decided May 14, 2012), holding that the federal income tax liability resulting from a postpetition farm sale is not "incurred by the estate" under section 503(b) and thus is neither collectible nor dischargeable in a chapter 12 plan.

The first amended plan, filed August 28, 2012, estimates the DEBTORS' 2010 income tax liability to the IRS at $193,635 and to IDOR at $19,553, and proposes to pay these postpetition debts in full within three months after confirmation.[2] The first amended plan also proposes to have the Trustee pay the tax liability for their 2011 and 2012 income in full within the same three-month period. That liability is unknown. Nothing in the record indicates that the DEBTORS have filed their federal or state income tax returns for 2010 or any subsequent year.

The DEBTORS propose to obtain the funds needed to pay the postpetition tax liabilities from the post-confirmation sale of a 48 acre farm that the DEBTORS own. The first amended plan provides that the farm will be sold to Jerry Ferguson's brother for $321,000, with the sale proceeds, net of transaction costs, secured claims and expenses of administration of the estate, used to pay the postpetition income and capital gains taxes to the extent of available funds.

The objecting creditors and the Trustee contend that the first amended plan's proposal to use estate assets to pay the postpetition tax liability violates the Supreme Court's ruling in *Hall*. The DEBTORS argue that because they are no longer seeking to

---

[2]The estimated tax liability for 2010 appears to derive from the postpetition equipment auction and the postpetition sale of grain. Presumably, the ordinary income tax liability arising from the DEBTORS' prepetition off-farm wages would have been paid through employer withholding.

3

discharge the postpetition capital gains tax debts in reliance on section 1222(a)(2)(A), *Hall* is no impediment to confirmation of the first amended plan.

The DEBTORS' narrow view of *Hall* cannot withstand even a cursory reading of the opinion. The Supreme Court held that the federal income tax liability resulting from a postpetition farm sale is not "incurred by the estate" and is neither collectible nor dischargeable in a chapter 12 plan. The DEBTORS are not seeking to discharge any portion of their postpetition income and capital gains tax liability in their chapter 12 case since they are proposing full payment of the liability. They are, however, proposing to have that liability paid and collected through their plan out of the proceeds from sale of assets of the estate. This proposal runs afoul of *Hall's* holding that postpetition tax liabilities incurred by chapter 12 debtors, personally, rather than by the estate, are not collectible (payable) in a chapter 12 plan. While *Hall's* holding was issued in the context of capital gains tax liability, the Supreme Court's rationale, that a chapter 12 estate is not a taxable entity and cannot incur income tax liability, is broader and covers ordinary income taxes as well as capital gains taxes.

*Hall's* holding is premised on pre-BAPCPA principles. A postpetition income tax liability incurred by a debtor, personally, is not an allowable prepetition claim under section 502. *See In re Ames Dept. Stores, Inc.*, 582 F.3d 422, 428-31 (2nd Cir. 2009). Neither is it the kind of postpetition claim that is treatable in a plan as if it had arisen prepetition.[3] Now, after *Hall,* it is settled that a debtor's postpetition income tax liability is not allowable as an administrative expense, either under the narrow terms of section 1222(a)(2)(A) or the

---

[3]The DEBTORS concede that section 348(d), which allows a claim that arises after the order for relief but before conversion to be treated as if it had arisen prepetition, only applies if the case is converted to one under chapter 7.

4

more general terms of section 503(b)(1)(B). The Supreme Court found cases treating postpetition taxes in corporate chapter 11 cases as administrative expenses to be distinguishable. 132 S.Ct. at 1892-93. The Court also made clear that the absence of a provision in chapter 12 similar to section 1305(a)(1) "confirms that postpetition income taxes fall outside § 503(b)."[4] 132 S.Ct. at 1890.

In support of their proposal to pay the postpetition income taxes in full through the first amended plan, the DEBTORS argue that they are not seeking to classify the taxes as an unsecured claim in reliance on section 1222(a)(2)(A), so that *Hall* is immaterial to its confirmability. This argument ignores the broader and more fundamental ruling of the Supreme Court, expressed as follows:

> Whatever the 2005 Congress' intent with respect to § 1222(a)(2)(A), that provision merely carved out an exception to the pre-existing priority classification scheme. The exception could only apply to claims "entitled to priority under section 507" in the first place. That pre-existing scheme was in turn premised on antecedent, decades-old understandings about the scope of § 503(b) and the division of tax liabilities between estates and debtors. *See Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) ("When Congress amends the bankruptcy laws, it does not write 'on a clean slate'"). If Congress wished to alter these background norms, it needed to enact a provision to enable postpetition income taxes to be collected in the Chapter 12 plan in the first place.

132 S.Ct. at 1893.

By rejecting the argument that section 1222(a)(2)(A) creates an exception to the general rule in chapter 12 that postpetition income taxes are not payable in the plan, the Supreme Court affirmed that preexisting principle. The DEBTORS' novel argument that

---

[4]Under section 1305(a)(1), taxes that become payable to a governmental unit while a chapter 13 case is pending may be paid through a plan if the creditor elects to file a proof of claim.

they may pay through the first amended plan their postpetition personal (non-estate) tax liabilities so long as they meet the best interest of creditors test runs afoul of *Hall's* broad and clear proscription against paying any postpetition income taxes through a chapter 12 plan. Confirmation will be denied.[5]

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### 

---

[5] Given today's ruling and the DEBTORS' stated intention to convert the case to chapter 7 absent confirmation, it is not necessary to address the other bases for opposing confirmation raised by the Trustee and the objecting creditors, including the lack of timely proofs of claim for the tax debts, the absence of a liquidation analysis or cash flow projection, the lack of feasibility, and that the DEBTORS' disposable income exceeds the proposed payment of $1,000 per year.