**SIGNED THIS: August 20, 2013**

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JERRY DEAN FERGUSON and ) | Case No. 10-81401 |
| JULIE RENE FERGUSON, ) | |
| ) | |
| Debtors. ) | |

O P I N I O N

This case began as one filed under chapter 12 on April 28, 2010. On November 28, 2011, this Court issued an opinion (the "First Marshalling Opinion") in the case, addressing a request for marshalling by a junior secured creditor, West Central FS, Inc. ("West Central"). Although sympathetic to the marshalling argument, the Court denied West Central's request because at that time the Debtors were only partially liquidating the secured assets. At the end of the First Marshalling Opinion, 2011 WL 5910659, the Court declared that the marshalling argument would be reconsidered if liquidation of the real estate occurred during the case. The chickens have come home to roost. In light of the

conversion of the case to chapter 7 and subsequent section 363 sale of the real estate, West Central asks to have its marshalling argument revisited.

The facts, arguments of the parties and relevant case law set forth in the First Marshalling Opinion are incorporated by reference and will only be summarized here as necessary. Hoping to reorganize their farming operation, the Debtors commenced this case by filing a chapter 12 petition on April 28, 2010. Confirmation was delayed for more than two years pending the Supreme Court's resolution of a circuit split over the proper interpretation of section 1222(a)(2)(A), concerning whether postpetition taxes could be discharged in a chapter 12 case or paid through a chapter 12 plan. On May 14, 2012, the Supreme Court issued its opinion in *Hall v. U.S.*, 132 S.Ct. 1882, 182 L.Ed.2d 840 (2012), unfavorable to debtors, deciding that a chapter 12 debtor's postpetition tax liabilities are not estate obligations that may be treated as an unsecured claim under section 1222(a)(2)(A) or otherwise paid with estate assets.

After the *Hall* decision came down, the Debtors filed a First Amended Plan, which turned out to be an ill-fated attempt to distinguish *Hall*, proposing to pay their post-petition tax liabilities through the plan with estate assets. This Court rejected that effort and denied confirmation in an opinion issued January 2, 2013, *In re Ferguson,* 2013 WL 28694. Shortly thereafter, the Debtors voluntarily converted to chapter 7. Upon the Chapter 7 Trustee's motion, the 48-acre farm owned by the Debtors was sold at courtroom auction for $411,000. The sale was confirmed on May 17, 2013. The Debtors received a chapter 7 discharge on June 3, 2013. As the First Amended Plan proposed sale of the real estate, West Central filed a motion to marshal assets on November 13, 2012. Following

denial of confirmation and conversion to chapter 7, West Central filed a restated motion to marshal assets on February 13, 2013. The marshalling issue has been briefed and is ready to be decided.

When the Debtors filed their chapter 12 petition, First Community Bank (FCB) held a first mortgage on real estate, a first priority lien on equipment, subsequently sold post-petition, and a first priority lien on 2009 crop proceeds. West Central held a second priority lien on the same equipment and crop proceeds, but did not have a junior mortgage on the real estate.

West Central sought a marshalling order to force FCB to look first to the value of the real estate to satisfy its debt, thus freeing up most of the equipment and crop proceeds for the benefit of West Central. Because the Debtors were proposing to retain ownership of the real estate, however, the Court determined that FCB's first priority status in the fully liquidated personal property collateral be honored. The Court ordered the funds paid to FCB, suggesting a different outcome if the real estate was to be sold.

There is no question that had the real estate been liquidated at that time, marshalling would have been ordered, FCB would have been paid first from the real estate proceeds, and West Central would have been paid the bulk of the equipment and crop proceeds. From an accounting standpoint, there is no reason why the same net result cannot be achieved at this later stage in the case. Objections to marshalling have been filed by the Debtors, the IRS and the Chapter 7 Trustee.

All three objectors make a curious argument that may be summarily dispatched. They contend that if West Central's marshalling request is now allowed, FCB will be

required to refund the funds it previously received. Not so. As the senior lienholder, FCB is entitled to be paid in full and has now been paid in full. No one is claiming FCB received more than it was owed. What remains is to determine how much West Central should now receive from the proceeds held by the Trustee, if marshalling is to be granted, which is a question of accounting. The argument for a refund by FCB implies a perception that the order of November 28, 2011 (Doc. 142) would have to be vacated if marshalling is now granted because FCB was paid from the wrong pile of cash. This perception is mistaken. Money is fungible. *Ransom v. FIA Card Services,* 131 S.Ct. 716, 729, 178 L.Ed.2d 603 (2011). Any need for FCB to return the funds it previously received in exchange for the same amount of proceeds from the recent sale of the real estate is mooted by the principle of "netting," whereby accounts are balanced by offsetting debits and credits without the physical exchange of funds or goods. *See In re R.L. Kelly and Sons, Millers,* 125 B.R. 945, 952-53 (Bankr.D.Md. 1991) (referring to restored proceeds, the distribution of which was recast when marshalling was granted).

The IRS and the Debtors make a related argument that because FCB received the equipment and crop proceeds two years ago, there are no longer two funds in existence, so marshalling cannot be applied. However, the First Marshalling Opinion anticipated the possibility of a subsequent sale of the real estate during the pendency of the bankruptcy case, which would trigger an opportunity to revisit the marshalling issue. Moreover, West Central's marshalling rights are determinable based on the circumstances that existed when the bankruptcy case was filed. Neither conversion to chapter 7, nor the passage of time,

alters that focus. To the extent that the objecting parties assume that West Central's Restated Motion is to be treated as a new marshalling request, in disregard of the fact that the initial marshalling request was made early in the case by West Central on August 17, 2010 (Doc. 49), that assumption is mistaken. As the Court has previously indicated, West Central's marshalling request would have been granted in 2011 but for the Debtors' pending proposal to retain their home place and farm ground. With the subsequent issuance of the Supreme Court's decision in *Hall,* confirmation of a plan and retention of the land became untenable leading to its sale by the Trustee.

When this case was filed, for purposes of the marshalling analysis, there were two subsets of collateral: 1) the real estate on which only FCB had a mortgage, and 2) the equipment and crop proceeds, which were subject to FCB's senior lien and West Central's junior one. These are the two "funds" for purposes of the marshalling analysis. While the Debtors' retention of the real estate was the reason marshalling was initially denied, the real estate has now been sold. The marshalling rights, however, that West Central had when the case was filed in 2010 and when the Court issued its First Marshalling Opinion in 2011 have not changed. What has changed is that the real property has been converted from dirt to cash. This change was anticipated by the Court in the First Marshalling Opinion. Marshalling was denied at that time because of the possibility that the Debtors could confirm a plan to retain ownership of the real estate. Consistent with the earlier opinion, and in light of sale of the real estate, it is appropriate to now re-evaluate West Central's marshalling rights. However, this is not a *de novo* analysis, but a continuation of the marshalling analysis that began much earlier in the case.

5

The IRS has filed a claim asserting a priority under section 507(a)(8) for 2010 income taxes in the amount of $194,072.98. A denial of marshalling would free up estate funds for payment of its priority claim. With additional capital gains taxes due from the post-petition sale of their real estate, the Debtors maintain that they are saddled with a large amount of taxes that are nondischargeable. A denial of marshalling would permit a healthy portion of that debt to be paid from estate assets thereby facilitating the Debtors' "fresh start" upon exiting bankruptcy. Granting marshalling would inhibit that fresh start, argue the Debtors.

In their Reply (Doc. 295), the Debtors estimate that their postpetition federal and state income tax liability exceeds $250,000, and includes capital gains taxes from the sale of their farm in 2013. Without deciding the issue, the Court questions the assertion that the Debtors are personally liable for the capital gains taxes arising from the post-conversion sale of the real estate. Unlike a chapter 12 estate, as *Hall* teaches, a chapter 7 estate is a separate taxable entity. The chapter 7 estate is liable for capital gains taxes arising from the sale of real estate during the administration of the estate, which are classified as an administrative expense. 11 U.S.C. § 503(b)(1)(B). Administrative expenses have second priority status under section 507(a). If there are insufficient funds to fully satisfy all such expenses, they are paid on a pro rata basis with other allowed expenses of similar priority. As *Hall* makes clear, there can be no preconversion administrative expense claims for taxes since a chapter 12 estate incurs no tax liability. The IRS appears to correctly recognize this principle in its claim 23-1, which asserts priority only under section 507(a)(8). The Illinois Department of Revenue's claim 24-1 runs afoul of this principle by asserting administrative

6

expense status for 2010 income taxes.[1]  To the extent the 2010 income taxes are not paid, the Debtors will remain personally liable for those amounts after bankruptcy.  With regard to the capital gains taxes arising from the post-conversion sale of the real estate, however, it is not clear that pass-through liability necessarily occurs.  *See In re Lambdin*, 33 B.R. 11 (Bankr.M.D.Tenn. 1983).

The Court will now turn to the issue at the heart of the three objections, i.e., the adverse financial effect that marshaling will have on their interests.  As the parties recognize, the marshalling issue plays out as a zero sum game.  There is simply not enough money in the estate to pay all claims, so the allocation of funds to one claimant diminishes the distribution to others.  The Debtors wish to have more money allocated to their nondischargeable tax liability. So does the IRS.  They argue it would be inequitable to give the money to West Central rather than to pay down the priority tax debt.  The Trustee contends it would be unfair to creditors, generally, to have the funds go to a single creditor.

Certainly distribution of unencumbered assets according to the priority scheme laid out in section 726 is the order of the day in chapter 7 cases.  The doctrine of marshalling, however, is an adjudicative rule for determining how certain assets that entered the estate encumbered by one or more unavoidable liens are to be administered.  The essence of the doctrine, its very purpose, is to protect a junior secured creditor from being treated as unsecured on account of the order of liquidation and distribution of the senior creditor's collateral.  By definition, any marshalling analysis begins with the premise that the junior secured creditor's interest is to be protected, unless an identifiable and valid reason exists

---

[1] Presumably, the Trustee will object to the Illinois Department of Revenue's claim.

7

to depart from the general rule. In this Court's view, the "inequity" of other creditors receiving less, or even nothing, cannot by itself be a valid reason to deny marshalling. The argument that allowing marshalling would prefer the junior secured creditor at the expense of unsecured creditors is a nonstarter. Of course it would. Protecting the collateral interest of the junior lienor is the purpose of marshalling. *Meyer v. U.S.*, 375 U.S. 233, 237, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963). While marshalling depletes funds otherwise available to unsecured creditors, that does not constitute legal prejudice in the marshalling context. *In re Robert E. Derecktor of Rhode Island, Inc.*, 150 B.R. 296, 299-301 (Bankr.D.R.I. 1993) (collecting cases).

The Trustee attempts to pigeonhole West Central's restated motion as one for reconsideration. Similarly, the IRS suggests that West Central is asking the Court to "reverse" its prior ruling. Because of the sale of the real estate, a material change since the prior ruling, the characterization of the restated motion as seeking reversal or reconsideration is not accurate or fair. The Court views this as a reapplication of the doctrine of marshalling on account of a change in circumstances, as previously anticipated.

The Trustee also errs in her assertion that the requirements of marshalling were not met at the time of the Court's prior ruling. The basic requirements for marshalling were indeed satisfied. As the Court indicated, it was only because the Debtors intended to propose a plan to retain the real estate, and the resulting unfairness to FCB as the senior lienholder, that West Central's marshalling request was denied subject to a change in circumstance due to sale of the real estate during the case.

The Debtors and the IRS cite *Meyer v. U.S.* for the proposition that courts have refused to marshal when the debtor's homestead exemption would be impaired. Here,

8

however, the Debtors have already been paid from the sale proceeds the sum of $30,000 in full satisfaction of their homestead exemption.

The IRS criticizes West Central for not having taken a second mortgage on the real estate. The same could be said of any junior lienholder who has an interest in only one of two funds, which is a necessary precondition for marshalling. The failure to acquire a junior interest in the second fund is not a defense to a junior creditor's marshalling request.

The Debtors rely upon *In re Brazier Forest Products, Inc.*, 921 F.2d 221 (9th Cir. 1990), rejecting a request for marshalling under Washington law. The rejection of marshalling was based upon the creditor's failure to establish that it or its subrogor was a secured creditor that had standing to assert the doctrine of marshalling. West Central, as the holder of a junior lien on equipment and crops as of the petition date, clearly has standing to request marshalling.

The Debtors rely upon another 9th Circuit case, *In re Center Wholesale, Inc.*, 759 F.2d 1440 (9th Cir. 1985). The 9th Circuit had previously held that a bankruptcy trustee could not block a junior secured creditor's request for marshalling. *Matter of Forester*, 529 F.2d 310 (9th Cir. 1976). In the interim, a California appellate decision was issued to the effect that a judgment creditor could, under state law, block a marshalling request if it prejudiced his interest. On that basis the 9th Circuit, abrogating its previous decision, held that where California law applies, a debtor in possession has the power to block a marshalling order. *Center Wholesale* is properly limited to cases involving California law. Moreover, *Center Wholesale* has not been followed and has been criticized by courts outside the 9th Circuit for departing from the established principle that a party with an interest inferior to that of

9

the junior lienholder cannot object to marshalling. *See In re West Coast Optical Instruments, Inc.,* 177 B.R. 720, 722 (M.D.Fla. 1992); *Robert E. Derecktor of Rhode Island,* 150 B.R. at 300-01.

The Debtors cite *In re Szwyd,* 394 B.R. 230 (Bankr.D.Mass. 2008), where the court, applying Massachusetts law, considered whether the trustee could marshal against the IRS, which held tax liens against two parcels of real estate owned by the debtor. The trustee liquidated the non-homestead real estate generating $25,000 in net proceeds. Despite the determination that the IRS tax lien was fully payable from the large amount of equity in the debtor's homestead, the IRS demanded turnover of the $25,000 held by the trustee. The court determined that the doctrine of marshalling could be applied against the IRS by the trustee, and that the IRS would not be prejudiced by looking only to the homestead real estate for payment since it would have to liquidate that property anyway in order to fully satisfy its lien. *Szwyd,* permitting a trustee to exercise marshalling rights, did not involve the marshalling rights of a junior lienholder and has no bearing on the issues at bar.

The Debtors also rely upon *In re Blagg,* 372 B.R. 502 (Bankr.D.Kan. 2007), applying Kansas law, for the proposition that marshalling is an equitable doctrine designed to promote fair dealing and justice. The court cited *Meyer v. U.S.,* for that platitude, which as discussed herein, supports West Central's position. The *Blagg* court held that the doctrine of marshalling could not be expanded via section 105(a) to require the debtors to turn over a tax refund that had been offset by the IRS and was never in the possession of the debtors. That holding has no application here.

The Debtors finally rely upon *In re Sherlock,* 2008 WL 4277719 (D.Kan. 2008), for the proposition that marshalling is not applicable unless there are two funds belonging to the

debtor. As discussed above, the West Central's right to have FCB marshal its collateral is properly analyzed as of the petition date, when FCB was secured by two sources of collateral, only one of which was encumbered by West Central's junior lien. *Sherlock* is of no aide to the Debtors.

West Central's restated motion to marshal assets should be granted. The basic requirements for marshalling were met as of the petition date. The sole reason for the Court's earlier denial of marshalling, retention of the real estate by the Debtors, has now been eliminated by sale of the real estate. That West Central's receipt of a portion of the sale proceeds will operate to prevent the IRS debt from being reduced, a result detrimental to the Debtors and the IRS, is not grounds to deny marshalling which by definition protects and prefers the interest of the junior lienholder.

The effect of marshalling is to treat FCB's claim, now satisfied, as having been paid from the proceeds of the real estate first and then the crop proceeds second, thus freeing up the net equipment proceeds for full allocation to West Central and the remaining portion of the crop proceeds to West Central as well, to the extent of its allowed claim. The payment of the Debtors' homestead exemption will not be disturbed. The Trustee's right to compensation from distribution of the proceeds must be factored in, however. A hearing to address the issues of distribution will be scheduled.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###