**SIGNED THIS: June 18, 2014**

_____
**Thomas L. Perkins**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **JERRY DEAN FERGUSON** | ) | No.  10-81401 |
| **JULIE RENE FERGUSON,** | ) | |
| Debtors. | ) | |

## O P I N I O N

This matter is before the Court on partial remand for approval of the Trustee's Final

Report (TFR) filed by the Chapter 7 Trustee, Jeana K. Reinbold (TRUSTEE).  The Order of

the District Court, entered March 11, 2014, provides "that the matter is partially remanded

to the Bankruptcy Court to conduct such further proceedings as it may deem appropriate

to determine the distributions affected by its decision granting the request of West Central

FS, Inc. to marshal liens."  This Court's jurisdiction must be exercised within the limited

scope of the partial remand, which does not encompass reconsideration of its decision to

apply the doctrine of marshaling for West Central's benefit, the issue now on appeal.

West Central filed two secured claims: Claim 17 in the amount of $120,291.15 and

Claim 18 in the amount of $56,039.34, representing the balance of principal and interest on

two promissory notes as of the petition date. No one disputes that these claim amounts are the correct petition date balances of principal and interest or that both claims were secured on the petition date by valid, perfected security interests in the Debtors' crops, equipment and the proceeds thereof. The TRUSTEE has funds on hand of $261,195.26. In her TFR, she proposes to distribute to West Central the sum of $176,330.49, the full amount of the petition date balances reflected in Claims 17 and 18.

West Central objects to the proposed distribution on the grounds that it is an oversecured creditor, noting that the sales of the Debtors' equipment and crops netted proceeds of $238,130.03. Oversecured creditors in bankruptcy cases are entitled to receive postpetition interest and reasonable fees, including attorney fees, costs and other charges if provided under the creditor's contract with the debtor. *See* 11 U.S.C. § 506(b); *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). West Central contends that it is entitled to be paid, as part of its allowed oversecured claims, postpetition interest at the contract rate plus reasonable fees and costs as provided in the loan documents.

The United States, for and on behalf of the Internal Revenue Service, responds and objects to the TFR and to West Central's arguments, contending that it would be inequitable to let West Central have all of the proceeds from the sale of the crops and equipment. The United States supports its contention by pointing out first that the Debtors' "2010 tax liability is almost entirely attributable to the sale of the crops and equipment that West Central now claims it should be able to collect without leaving any of those proceeds to pay those taxes," and second that "if marshaling had been granted as

2

of the petition date, then there would have been considerable funds left over for the debtor to use to pay that tax liability timely." Doc. 430, p.2.

While the doctrine of marshaling is founded on principles of equity, its sole purpose is to protect the security interest of the junior lienholder. *See Meyer v. U.S.,* 375 U.S. 233, 237, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963)(purpose of marshaling "is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security"). To the extent the United States argues that the application of marshaling must take into account the effect on the debtors and unsecured creditors, including the taxing agencies, this Court disagrees. The primacy of a secured creditor over unsecured creditors, with respect to the secured creditor's collateral, is one of the basic tenets of bankruptcy law. *See* 11 U.S.C. § 725. The goal of marshaling is to maximize the value of the junior lienholder's collateral interest, which necessarily diminishes funds that would otherwise be available for unsecured creditors.

More pointedly, the United States grossly exaggerates the effect of marshaling in this bankruptcy case. Cutting through the obfuscation, the result of marshaling may be simply stated: First Community Bank is treated as being paid in full from the real estate proceeds, leaving the equipment and crop proceeds for the benefit of West Central, so West Central is treated as if it had the senior lien on the equipment and crops. The marshaling doctrine has no further effect in this case; specifically, it has no role to play in determining the amount that should now be distributed to West Central, which is an issue of law governed by the Bankruptcy Code. When a statute provides the rule of decision, a court may not use

equitable considerations to reach a different result. *Matter of Greenig*, 152 F.3d 631, 635 (7th Cir. 1998); *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154-55 (7th Cir. 1993).

Section 506(b) of the Bankruptcy Code provides the rule of decision that West Central relies upon. Where the value of a secured creditor's collateral is greater than the amount of its claim, "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). Unlike the provision for recovery of fees, costs and charges, allowable only if reasonable, the right to recovery of postpetition interest is unqualified. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. at 241.

An oversecured creditor's right to receive postpetition interest is the kind of statutory entitlement that may not be withheld in the name of equity. *Matter of Lapiana*, 909 F.2d 221, 224 (7th Cir. 1990)(refusing to create a new equitable defense under § 506(b) for lack of due diligence by a secured creditor, while recognizing the viability of the doctrine of estoppel for affirmative misconduct). *See, also, In re Stoecker*, 179 F.3d 546, 551 (7th Cir. (1999)(a bankruptcy judge has no authority to cut down the entitlements that creditors seek to enforce in bankruptcy, except as provided by the Bankruptcy Code itself), *aff'd sub nom. Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 24-25, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)(bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides).

Of course, the value of the collateral imposes a hard ceiling on section 506(b)'s

entitlements.   Once the collateral is depleted, the creditor no longer has any further property interest to support the payment of additional interest, fees, costs or charges. *Matter of Lapiana,* 909 F.2d at 223; *In re S&P, Inc.,* 189 B.R. 159, 171 (Bankr.N.D.Ind. 1995). This follows directly from the statute's prefatory qualifier that the entitlements are allowed only "to the extent" the collateral value exceeds the claim amount.   Applying these principles, the Court determines that West Central, as the holder of an allowed oversecured claim, is entitled, as a matter of law, to receive postpetition interest on its claims, to the extent supported by the value of its collateral.

The United States blames West Central for "prematurely" raising the marshaling issue, claiming that West Central's actions caused First Community Bank to run up its own interest.  This contention is nonsensical and is wholly without factual support.[1]  The actions taken by West Central to pursue marshaling early in the case were entirely necessary and appropriate to protect its interest.   Moreover, West Central bears no responsibility for the delays that occurred in this case.   After they filed their chapter 12 petition on April 28, 2010, the Debtors, through counsel, moved for several  extensions of time to file a chapter 12 plan, all of which were granted without opposition.   *See* Documents 22, 60, 79, 182.   After the Debtors finally filed a chapter 12 plan on May 25, 2011, they requested that the hearing on confirmation be deferred until after the Supreme Court issued its decision in *Hall v. U.S.,* 132 S.Ct. 1882, 182 L.Ed.2d 840 (2012).   The Debtors are responsible for the slow pace at which their case proceeded, as well as the long delay in liquidating the real estate.

The Debtors object to the TRUSTEE'S proposal to pay West Central $176,330.49 as

---

[1]The provisional payment to First Community of the personal property proceeds actually avoided the accrual of additional interest on First Community's debt.

5

a secured creditor, contending that West Central's status must be measured as of the date of conversion, at which time it was unsecured. In addition to being wrong in its premise, this argument fails to understand the limited effect of conversion and fails to give full credence to the power of a federal bankruptcy court to make and revise provisional orders in the context of an ongoing case.

As a general rule, a creditor's secured and perfected status is determined as of the petition date. *In re WEB2B Payment Solutions, Inc.*, 488 B.R. 387, 390-91 (8th Cir.BAP 2013). A secured creditor's lien will survive a bankruptcy filing unless the lien is voluntarily released or is avoided pursuant to one of the avoiding powers. *Id.* No avoidance action was ever commenced against West Central. This Court's Order denying West Central's marshaling request did not avoid West Central's liens. The Order merely denied marshaling at that point in the case subject to future reconsideration if circumstances changed.

The Order denying marshaling was not a final order. In a reorganization case such as a chapter 12 case, it is confirmation of the plan of reorganization that is the final judgment. *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993). The marshaling Order was an interlocutory order governed by the doctrine of the law of the case. *See Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006). A bankruptcy court has the power to reconsider and revise, modify or vacate its own interlocutory orders. *Id.; In re GGM, P.C.*, 165 F.3d 1026 (5th Cir. 1999); *Cantwell & Cantwell v. Vicario*, 464 B.R. 776, 786-87 (N.D.Ill. 2011). *See, also, Matter of Lintz West Side Lumber, Inc.*, 655 F.2d 786, 789 (7th Cir. 1981)(referring to a bankruptcy judge's "ancient and elementary power to reconsider" and

6

revise an order entered during the pendency of bankruptcy proceedings).

Neither does this case present a situation where parties have relied to their detriment upon the interlocutory order denying marshaling. Because the Court gave explicit warning in its Opinion denying marshaling (Doc. 141) of the possibility of reconsideration if the real estate was to be liquidated, no one can claim surprise, and no party took detrimental action or refrained from acting in reliance upon the order.

West Central was secured and perfected when the case was commenced. Its liens were never avoided. The Order temporarily denying its marshaling request was interlocutory, never became final since a plan was not confirmed, and was ultimately modified to grant marshaling. This Court made no final determination that West Central was unsecured or was to be treated as unsecured. The denial of marshaling was a provisional ruling subject to the Debtors confirming a plan by which they retained their farm real estate. The Court had the power to modify that ruling and did so based upon a change in circumstances.

The Debtors' theory that conversion of the case to chapter 7 somehow locked in the provisional Order and deprived the Court of the power to modify it, a theory for which they offer no authority, finds no support in the Bankruptcy Code. The effect of conversion is addressed in section 348, which provides as follows:

> Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C. § 348(a).

Conversion does not commence a new case; rather, it is a continuation of the same

case under a new chapter. *Standiferd v. U.S. Trustee,* 641 F.3d 1209, 1215 (10th Cir. 2011); *In re Haendiges,* 158 B.R. 871, 873-74 (Bankr.M.D.Fla. 1993). All that transpired in the previous chapter is not undone by converting to a new chapter. *Id. (citing In re State Airlines, Inc.,* 873 F.2d 264 (11th Cir. 1989)). Specifically, conversion does not change the date of the petition for determining the existence, priority or validity of liens. *In re Commercial Millwright Service Corp.,* 245 B.R. 585 (Bankr.N.D.Iowa 1998).

Moreover, conversion has no effect on the operation of the rights and powers accorded trustees and debtors in possession via Code sections 544 through 549. *See* 3 COLLIER ON BANKRUPTCY, ¶ 348.02(2) (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Specifically, in a converted case, the trustee's status for purposes of section 544 is determined as of the date of commencement of the bankruptcy proceeding, not the date of conversion. *General Elec. Credit Corp. v. Nardulli & Sons,* 836 F.2d 184, 191-92 (3d Cir. 1988).

The Debtors and the United States rely upon the powers granted under section 544(a)(3). In addition to being ineffective under the facts of this case, the section 544(a) powers were not timely asserted and are time-barred. The exercise of those powers must be sought by commencement of an adversary proceeding. 10 COLLIER ON BANKRUPTCY, ¶ 7001.03[1]; *In re Wright,* 2011 WL 3298914 (9th Cir.BAP 2011). The Debtors, while in chapter 12, could have filed an adversary proceeding against West Central to assert the rights granted by section 544(a)(3). *See* 11 U.S.C. § 1203. They did not do so, even after West Central sought marshaling relief. In this case, the applicable statute of limitations for section 544 actions is two years after the entry of the order for relief (the petition date). *See* 11 U.S.C. § 546 (a)(1)(A). As no trustee was appointed within the two year period, the one

year extension potentially available under section 546(a)(1)(B) does not apply notwithstanding subsequent conversion to chapter 7. *In re American Pad & Paper Co.,* 478 F.3d 546, 551-52 (3d Cir. 2007); *In re Weishaar,* 1998 WL 34065284 (Bankr.C.D.Ill. 1998))(Altenberger, J.)(collecting cases). Any action under section 544(a) was time-barred as of April 11, 2012, and conversion did not resurrect it.[2]

The Court determines that West Central is properly treated as an oversecured creditor in this case. The fact that conversion occurred prior to reconsideration of the provisional Order denying marshaling in no way precludes the Court from subsequently modifying its Order. Neither does conversion permit a trustee to ignore the original filing date and disregard creditor entitlements extant at that time, as if conversion commenced a new case, which it clearly does not. The Court determines that West Central is entitled to be paid postpetition interest at the contract rate on its claims, determined to be oversecured, as a matter of law pursuant to section 506(b). This statutory entitlement will not be diminished or suspended based upon any argument of equity or unfairness.

West Central filed two declarations of its General Manager, Barry Schmidt, on June 6, 2014 (Doc. 447) and June 9, 2014 (Doc. 449), which provides an accounting that includes

---

[2]The Debtors cannot be faulted for not raising section 544(a)(3) earlier. A purchaser of the real estate as of the petition date would have taken title subject to First Community's mortgage lien, which was subsequently paid in full from the real estate proceeds. So the hypothetical rights of a BFP of the real estate would have done the Debtors no good. Under Illinois law, the Debtors could not have blocked marshaling by West Central and neither could a transferee taking title with full knowledge of First Community's mortgage.

 The United States' observation that it is not aware of any court case where marshaling has been applied against a purchaser is a red herring for at least two reasons. First, purchasers who buy property subject to a properly recorded mortgage have no reason to cry foul when the mortgagee seeks to have its mortgage debt paid. Second, as the proponent of an argument for an exception to the general rule favoring marshaling, the United States bears the burden to submit supporting authority. The fact that no Illinois court has issued an opinion holding that a BFP may block marshaling is dispositive against the United States. *Cf. In re Azabu Buildings Co., Ltd.,* 383 B.R. 738, 747 (Bankr.D.Hawaii 2008)(recognizing that "blocking" is inconsistent with the fundamental purpose of marshaling to protect the junior lienholder).

postpetition debits and credits to the two accounts.  Claim No. 17 is for a loan evidenced by a Note dated September 17, 2008.  According to Schmidt, interest has accrued during the entire postpetition period at a rate of 11.25%, and several credits were issued for patronage checks and diesel fuel.  The balance due as of March 31, 2014, was $171,826.03.  Claim No. 18 is for a loan evidenced by a Note dated November 17, 2009.  According to Schmidt, interest accrued from April 10, 2010 until December 23, 2010, at the rate of 5.25%, and thereafter at 11.25%.  The balance due as of March 31, 2014, was $78,242.17.

Thus the March 31, 2014, balances on Claims 17 and 18 total $250,068.20, a sum substantially in excess of the value of West Central's liquidated collateral, $238,130.03, which value caps the allowable distribution that is to be paid to West Central under section 506(b).  Since the distribution is capped at an amount that is not sufficient to reimburse West Central for all of its postpetition interest, it is not necessary to address the issue of West Central's attorney fees as there is no collateral value left to support reimbursement of any fees.

West Central's objection to the TFR will be sustained.  The TFR cannot be approved since it fails to propose distribution to West Central of the full value of its collateral, $238,130.03, as required by application of section 502(b).  The objections of the United States and the Debtors, to the extent inconsistent with this ruling, must be overruled.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###